UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | No. 3:18-cr-73(VLB) |
| : | |
| JOEL CRUZ : | |
| Defendant. : | May 6, 2021 |
| : | |
| : | |
| : | |
| : | |
| : | |

## MEMORANDUM OF DECISION DENYING DEFENDANT JOEL CRUZ'S MOTION FOR A REDUCTION OF SENTENCE, DKT 65

**Before the Court is Defendant Joel Cruz's *pro se* motion for a sentence reduction to provide for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). [Dkt. 65 (Def. Mot. for Sentence Reduction)]. Defendant seeks a modification of his sentence from incarceration to home confinement based on his asserted risk of severe complications if he contracts COVID-19 while incarcerated at FCI Fort Dix. [*Id.* at 16]. Defendant argues that the BOP has been negligent in their response to an outbreak at the prison. [*Id.* at 5, 10, 13, 16]. Attorney Michael G. Dolan was reappointed to represent Mr. Cruz with respect to his motion. The Government opposes Mr. Cruz's motion. [Dkt. 69 (Gov. Mem. in Opp'n)].**

**After Mr. Cruz filed his *pro se* motion, he sent a letter to the Court stating that he tested positive for COVID-19 and was diagnosed with pneumonia. [Dkt. 70 (Cruz Ltr., Jan. 19, 2021)]. He reported suffering from shortness of breath, dizziness, body aches, fevers, and sleeplessness. [*Id.* at 2]. He reported that there was no medical staff available in the prison after 7:30 P.M. and claimed that staff refused**

1

to provide him with his medical records. [*Id.* at 3]. Based on this information, the Court ordered expedited supplemental briefing to address issues raised in the *pro se* motion and in Mr. Cruz's letter. [Dkt. 70 (Order for Suppl. Br.)].

The Court reviewed Mr. Cruz's *pro se* motion, his sealed medical records, the Government's opposition brief, and the accompanying briefing and documents filed in response to the Court's order. After reviewing all the forgoing, the Court DENIES Defendant's motion.

## Background

On September 2, 2017 at 6:21 p.m., local police observed a Jeep turn out of a parking lot and onto an I-95 on-ramp, accelerating at a high rate of speed. [Dkt. 47 (Pre-Sentence Investigation Report) ¶ 6].[1] The police officer first activated his overhead lights, then his sirens, but Mr. Cruz refused to stop. [*Id.*]. Mr. Cruz engaged police in a high-speed pursuit on two interstate highways. [*Id.* ¶¶ 6-8]. During the pursuit, Mr. Cruz threw papers, a postal box, and a blue football-sized object from his vehicle. [*Id.* ¶¶ 7, 9-10]. The pursuit ended after Mr. Cruz's vehicle was struck by a police car and then struck the curb. [*Id.* ¶ 8].

Mr. Cruz was arrested, and his person and vehicle searched. [*Id.* ¶ 9]. Police discovered five cell phones (two appeared damaged) and an open black duffle bag containing three bundles of cash and three envelopes containing additional cash,

---

[1] At sentencing, the Court confirmed that Mr. Cruz was interviewed by Probation in the presence of his attorney and that he reviewed the final report. [Dkt. 64 (Sent. Hr'g. Tr.) at 4:16-4:24]. The Court adopted the pre-sentence investigation report, as amended to reflect the Court's ruling on Mr. Cruz's net worth, as its findings of fact. [*Id.* at 11:24 -12:03].

2

totaling $34,360. [*Id.* ¶¶ 9-10]. Police recovered the package that Mr. Cruz threw from his vehicle during the pursuit; it contained approximately one kilogram of cocaine. [*Id.* ¶ 10].

Mr. Cruz pled guilty to Possession with Intent to Distribute 500 Grams or More of Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). [Dkt. 30 (Plea Agreement)]; [Dkt. 35 (Order Accepting Findings and Recommendations of Magistrate Judge Robert A. Richardson on Plea)]; [Dkt. 59 (Crim. J)]. The offense of conviction carries a minimum term of imprisonment of 5 years and the maximum term is 40 years. 21 U.S.C. § 841(b)(1)(B).

At sentencing, the Court weighed Mr. Cruz's mixed character and unfortunate background with the pernicious and exploitative nature of his trafficking activities, which he undertook for financial advantage. [Sent. Hr'g Tr. at 29:19-31:21]. The Court also considered the sentence recommended by the advisory U.S. Sentencing Commission Guidelines. [*Id.* at 33:04-35:06]. Considering Mr. Cruz's criminal history (criminal history category III) and the circumstances of the offense (total offense level of 23), the guidelines recommended a range of 57-71 months of imprisonment. [PSR ¶ 66].

Taking all of the 18 U.S.C. § 3553(a) sentencing factors into account, the Court sentenced Mr. Cruz to 63 months imprisonment to be followed by five years of supervised release, which was within the range contemplated by the parties' plea agreement. [Sent. Hr'g Tr. at 35:07-36:04].

A review of the Bureau of Prison's ("BOP") Inmate Locator confirms that Mr. Cruz is designated to FCI Fort Dix. *Inmate Locator Service, BOP Registration no.* 25853-014, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last reviewed May 6, 2021). His current release date is August 14, 2022. *Id.*

### Legal Standard

"Federal courts are forbidden, as a general matter, to 'modify a term of imprisonment once it has been imposed'; but the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011) (citations omitted) (quoting 18 U.S.C. § 3582(c)). The statute providing for the finality of a criminal judgment contains a narrow exception to provide for re-sentencing for compassionate release. 18 U.S.C. § 3582(c)(1)(A).

Section 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> [T]he court ... upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that ... extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Addressing the specific provision under which Defendant seeks relief from his sentence, the First Step Act of 2018 amended the procedural requirements for bringing a motion for resentencing to provide compassionate release. First Step Act of 2018, Section 603(b), Pub. L. 115-391, 132 Stat. 5194 (2018) (amending 18

4

U.S.C. § 3582(c)(1)(A)). Previously, only the Bureau of Prisons ("BOP") could move for compassionate release and such motions were rarely filed. *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020). The First Step Act amendments were intended to address past inaction by the BOP by removing it as the sole arbiter of compassionate release, while still permitting the BOP to weigh-in on a defendant's request via the statute's exhaustion of administrative remedies requirement. *See id.* at 232.

In *Brooker*, the Second Circuit held that since the BOP no longer has exclusive authority to bring a motion for compassionate release, district courts have the discretion to determine what constitutes "extraordinary and compelling" reasons outside of the outdated U.S. Sentencing Commission policy statements when the defendant moves for compassionate release. 976 F. 3d at 234-36. In short, the statute only requires courts to consider "applicable" statements issued by the U.S. Sentencing Commission and the relevant policy statement, U.S.S.G. § 1B1.13, is no longer "applicable" because the policy statement refers exclusively to a motion brought by the Director of the BOP. *Id.* at 235-36. In other words, "[w]hen the BOP fails to act, Congress made the courts the decision maker as to compassionate release." *Id.* at 236. Therefore, courts may consider "…the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release," and not just those delineated by the U.S. Sentencing Commission's policy statement. *Id.* at 237.

Consequently, the Court may grant a Defendant's motion for compassionate release if: (1) the Defendant has fully exhausted his administrative remedies or 30

5

days have passed from receipt of his request by the Warden, and (2) the Court finds that, after considering the Section 3553(a) factors, that "extraordinary and compelling reasons warrant" a reduction of his term of imprisonment.

The defendant bears the burden of proving that he is entitled to a sentence reduction. *United States v. Gagne*, 451 F. Supp. 3d 230, 234 (D. Conn. 2020). The district courts have broad discretion in deciding whether to grant or deny a motion for compassionate release. *United States v. Gileno*, 448 F. Supp. 3d 183, 186 (D. Conn. 2020); *see also* § 3582(c)(1)(A) ("[T]he court…*may* reduce the term of imprisonment...")(emphasis added).

## Discussion

I. **Exhaustion of administrative remedies pursuant to 18 U.S.C. § 3582(c)(1)(A)**

The Government argued that Mr. Cruz did not exhaust his administrative remedies pursuant to 18 U.S.C. § 3582(c)(1)(A) because Mr. Cruz did not include any documentation verifying that he requested the BOP to file a motion for compassionate release on his behalf. [Gov. Mem in Opp'n at 8]. The Government further argued that Christina Clark, legal counsel at FCI Fort Dix, advised that they did not have a record of such request. [*Id.*]. The Government did not file an affidavit from Attorney Clark in support of this assertion or explain the scope of the BOP's records search.

In response to the Court's briefing order, the Defendant produced a signed compassionate release request form dated December 7, 2020. [Dkt. 71-4, Def. Suppl. Ex. D]. The form is accompanied by a handwritten notation stating, "This

6

document was place (sic) in the institutional mailbox on Dec. 7, 2020, at H.U. # 3852." Additionally, counsel re-submitted a request for consideration for compassionate release to the warden on January 20, 2021 and again on January 27, 2021. [Dkt. 71-5, Def. Suppl. Ex. E.].

Technically, the Defendant's motion is premature because administrative remedies must be exhausted before a defendant proceeds with their motion. Section 3582(c)(1)(A) provides, in relevant part, that the court may reduce a defendant's sentence "...*upon motion of the defendant after* the defendant has fully exhausted all administrative rights ... or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,..." (emphasis added); see *United States v. Rivera*, 466 F. Supp. 3d 310, 315 n. 2 (D. Conn. 2020)("Implicit in this ruling is that exhaustion under 18 U.S.C. § 3582(c)(1)(A) requires that an inmate exhaust administrative remedies prior to filing a motion for compassionate release, and thus administrative remedies cannot be exhausted during the pendency of the motion.").

The Court applies the prison mailbox rule in determining when the warden received the defendant's request for compassionate release under § 3582(c)(1)(A). *Id.* at 314 (citing *United States v. Resnick*, 451 F.Supp.3d 262, 268–69 (S.D.N.Y. 2020)). Mr. Cruz submitted in inmate request for consideration for compassionate release on December 7, 2020 and his *pro se* motion was filed on December 28, 2020. [Dkt. 65]. Thus, absent a showing that he fully exhausted his rights to appeal the warden's adverse decision, his motion was premature.

**Nevertheless, the purpose of § 3582(c)(1)(A)'s exhaustion requirement is satisfied here because the BOP has had the opportunity to weigh in on his compassionate release request within the time parameters contemplated by Congress.** See *United States v. Gamble*, No. 3:18-CR-0022-4(VLB), 2020 WL 1955338, at *3 (D. Conn. Apr. 23, 2020)(explaining the policy purpose behind the exhaustion requirement in this context), *aff'd on other grounds*, *United States v. Butler*, No. 20-1379-CR, 2021 WL 1166001 (2d Cir. Mar. 29, 2021). In *Butler*, the Second Circuit declined to consider whether exhaustion is mandatory under § 3582(c)(1)(A). 2021 WL 1166001, at *1. **The Court need not address the effect of the passage of time and subsequent exhaustion of his administrative remedies because Mr. Cruz fails to demonstrate that "extraordinary and compelling" reasons exist to modify his sentence and his proposed sentence reduction is inconsistent with the § 3553(a) sentencing factors.**

**II.     Whether Defendant has demonstrated "extraordinary and compelling reasons"**

As to what constitutes "extraordinary and compelling" reasons to reduce a defendant's sentence, this Court and others have recognized that an inmate's especially heightened risk of infection and risk of developing severe complications from COVID-19 based on their specific medical history may constitute "extraordinary and compelling" reasons to grant compassionate release, often in combination with other factors. *See, e.g. United States v. Jepsen*, 451 F. Supp. 3d 242, 245-47 (D. Conn. 2020) (granting motion for compassionate release where defendant suffers from a compromised immune system and defendant had less than eight weeks remaining on sentence); *United States v. Miller*, No. 3:15-CR-132-2 (VLB),

8

2020 WL 3187348, at *5 (D. Conn. June 15, 2020)(granting motion for compassionate release for severely ill defendant with less than three months remaining on sentence).

In determining whether a defendant's vulnerability to the virus constitutes "extraordinary and compelling" reasons for re-sentencing, courts have undertaken factually intensive inquiries considering, among other case-specific factors: defendants' age, the severity and documented history of their health conditions, defendants' history of managing those conditions in prison, the proliferation and status of infection at defendants' facilities, and the proportion of the term of incarceration that has been served. *United States v. Brady*, No. S2 18 CR. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020)(citations omitted). Courts considering defendants' medical vulnerability from COVID-19 ordinarily look to the CDC's guidance on at-risk health populations. *Rivera*, 466 F. Supp. 3d at 315-17; *see also, e.g.*, *United States v. Adams*, No. 3:16-CR-86-VLB, 2020 WL 3026458, at *2 (D. Conn. June 4, 2020); *United States v. McCarthy*, No. 3:17-CR-0230 (JCH), 2020 WL 1698732, at *5 (D. Conn. Apr. 8, 2020).

Mr. Cruz is 38 years old, so his age is not a particular risk factor for severe illness. [PSR at 2 (date of birth)]. Eight out of ten COVID-19 deaths reported in the U.S. have been in adults 65 years old and older. *See Older Adults*, Ctrs. for Disease Control and Prevention, www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated Apr. 16, 2021).

Mr. Cruz's *pro se* motion argues that his health conditions render him especially vulnerable to the virus, specifically, obesity and gout. [Def. Mem. in Supp. at 2]. His medical records establish that he has gout and some dermatological conditions. [Dkt. 67 (Sealed Med. R) at 32] (health problem list). He has received extensive treatment, diagnostic testing, and monitoring of his gout from BOP and outside clinicians. Gout is not recognized by the CDC as a condition that increases a person's risk of severe illness from COVID-19. *People with certain medical conditions*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, (last updated Apr. 29, 2021).

Apart from his chronic gout and occasional dermatological conditions, Mr. Cruz is generally healthy. [Dkt. 67 (Sealed Med. R) at 32] (health problem list). The BOP classified Mr. Cruz as Care Level 1 (Healthy or Simple Chronic Care). [Dkt. 67 at 2 (Dec. 10, 2019, BOP Summ. Reentry Plan.)]; *see Care Level Classification for Medical and Mental Health Conditions or Disabilities*, Bureau of Prisons, https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf, (updated May 2019). During his pre-sentence investigation interview, he reported that he was in good health. [PSR ¶ 50].

The Government concedes that based on its calculation of his Body Mass Index ("BMI"), Mr. Cruz is obese, which is a condition identified by the CDC to increase a person's risk for severe illness from COVID-19. [Gov. Opp'n at 8-9](citing *People with certain medical conditions*, Ctrs. for Disease Control and Prevention and calculating BMI at 35.2). In contrast, the BOP does not consider Mr. Cruz obese.

10

[Dkt. 67 (Apr. 8, 2019, history and physical exam. note) at 111]("Obese: no"). However, the BOP's BMI measurements place him in the obese range. *See* [*Id*. at 80 (Oct. 16, 2019) BMI 32.3]; [*Id*. at 77 (Dec. 13, 2019) BMI 31.9]; *People with certain medical conditions*, Ctrs. for Disease Control and Prevention. Based on the latest CDC guidance, the Court agrees with the parties that Mr. Cruz has a condition which is medically recognized to increase his risk of severe illness from the coronavirus.

Mr. Cruz was placed in quarantine on January 4, 2020 and tested positive for COVID-19 the following day. [Dkt. 72-1 (Def. Suppl. Sealed Med. R.) at 5](Jan. 4, 2021, clinical encounter note]; [Dkt. 72-2 at 2](COVID-19 test result). A nurse ordered an x-ray for shortness of breath on January 11th. [Dkt. 72-1 at 4]. He was diagnosed with pneumonia (unknown organism) and prescribed an albuterol inhaler and prednisone on January 15th. [*Id*. at 3]. According to a medical note dated January 24, 2021:

> **Inmate tested for covid-19 greater than ten days ago. Per pandemic response plan inmate no longer in need of daily medical assessment unless inmate becomes symptomatic. Inmate denies covid-19 symptoms. Educated that unless sob/chest pain/dizziness or generally not feeling well occurs he no longer needs to come for vital signs. Inmate educated to report to medical staff if these symptoms develop. Inmate verbalized understanding.**
>
> [*Id*. at 2].

In an email to his attorney, Mr. Cruz reports that he is experiencing shortness of breath, dizziness, body aches, and sleeplessness. [Dkt. 71-3, Def. Suppl. Ex. C (Jan. 28, 2021 email from Cruz to Atty. Dolan)].

This Court and others have declined to find "extraordinary and compelling" circumstances in cases where a defendant has already contracted and recovered from COVID-19. *United States v. Rosado*, No. 3:14-CR-162(VLB), 2021 WL 431474, at *6 (D. Conn. Feb. 8, 2021) *United States v. Saunders*, No. 3:19-CR-00167 (VLB), 2020 WL 6507389, at *7 (D. Conn. Nov. 5, 2020) ("…[he] has already demonstrated that the COVID-19 virus is not lethal for him, as he successfully weathered a previous infection. Mr. Saunders has also put forward no evidence that he will or is likely to contract the virus again, or if he did that his condition would be worse now than it was when he contracted the virus previously."); *United States v. Gil-Grande*, No. 3:16-CR-19 (VAB), 2020 WL 5868339, at *4 (D. Conn. Oct. 2, 2020)(surveying cases); *United States v. Santiago*, No. 92-CR-563 (BMC), 2020 WL 4926470, at *2 (E.D.N.Y. Aug. 21, 2020)("I do not believe that a positive COVID-19 test, even in an individual with risk factors for severe complications or death, constitutes an extraordinary and compelling circumstance in and of itself."); *see also United States v. Adams*, No. 10-CR-82 (RJS), 2020 WL 4505621, at *3 (S.D.N.Y. Aug. 4, 2020)(Sullivan, J sitting by designation)(declining to find that "extraordinary and compelling" reasons exist because the long-term adverse effects of the virus on the offender were speculative); *United States v. Davis*, No. 12-CR-712 (SHS), 2020 WL 3790562, at *3 (S.D.N.Y. July 7, 2020).

The Court was deeply concerned by the contents of Mr. Cruz's January 19, 2021 letter to the Court. The letter gave the impression that Mr. Cruz was suffering from a potentially fatal complication from COVID-19 without sufficient medical attention. The medical documentation is mixed at best and does not shed light on

12

his long-term prognosis. Although he claimed that the care being provided by the BOP at FCI Fort Dix was inadequate, Mr. Cruz does not establish that he required a higher level of care than could be provided at the prison or that any medical treatment was denied. *Compare to United States v. Beck*, 425 F. Supp. 3d 573, 580–81 (M.D.N.C. 2019)("Ms. Beck has invasive breast cancer and has received grossly inadequate treatment for her condition while serving her sentence in BoP custody. During the lengthy delays, her cancer spread to her lymph nodes. Absent judicial oversight, she is unlikely to receive better treatment at FCI Aliceville going forward. She is in urgent need of appropriate treatment to prevent the further spread of her disease and the potential loss of her life."). On the contrary, Mr. Cruz's health was monitored closely by medical staff during his bout with the virus, including daily vital checks. Without more information, Mr. Cruz has not established any need for convalescence outside of a correctional institution, such that he is now debilitated because of the virus.

The Court also briefly considers conditions at FCI Fort Dix. It is the largest federal prison by population in the country. Population Statistics: Inmate Population Breakdown, Bureau of Prisons, https://www.bop.gov/mobile/about/population_statistics.jsp#pop_totals (last updated May 6, 2021)(listing 2646 inmates at the prison). It also has the highest COVID-19 historical case count in the federal prison system: 1,800 inmates are listed as recovered, there are two active cases, and two fatalities. *COVID-19 Dashboard*, Bureau of Prisons, https://www.bop.gov/coronavirus/ (last updated May 6, 2021). These statistics lead credence to Mr. Cruz's concerns about the threat of an outbreak at the facility. On the other hand, it also

serves to dispel his argument about insufficient medical resources to treat those infected as the virus has come to pass with relatively few fatal cases.[2]

In sum, Mr. Cruz has a health condition which is medically recognized by the CDC to increase a person's risk of severe complications from COVID-19. He is otherwise healthy, and his age is not a risk factor. While he contracted COVID-19, the BOP considers him recovered and the evidence regarding whether he is symptomatic is mixed. Still, Mr. Cruz has not adduced evidence to show that his bout with the virus required an escalation in his care, that he was denied any appropriate medical treatment, or that his condition will result in any lasting effects. *United States v. Neubert*, No. 14-CR-200S, 2021 WL 248008, at *6 (W.D.N.Y. Jan. 26, 2021)(declining to find extraordinary and compelling reasons where the defendant received "regular and appropriate" medical care). Thus, his medical needs, even during the pandemic, do not constitute extraordinary and compelling reasons to modify his sentence.

### Consideration of the 18 U.S.C. § 3553(a) sentencing factors

Even if the Court were to find that "extraordinary and compelling" reasons exist, consideration of the 18 U.S.C. § 3553(a) sentencing factors would not warrant

---

[2] If the case fatality rate across the BOP were the same as FCI Fort Dix (applying a case fatality rate of 0.11%), there would have been 52 fatalities instead of 234. *Id*. This statistic is offered for illustrative purposes only. To calculate the case fatality rate, the Court divided the number of fatal cases by the total number of cases (active, recovered, and fatal) to determine the proportion of fatal cases among inmates who were infected. As the Government notes, FCI Fort Dix "is not a medical facility." [Dkt. 73 (Gov. Suppl. Mem.) at 2]. Apart from FCI Butner Low, which is a low security prison like FCI Fort Dix, the BOP's medical facilities have had the highest fatality rates. *COVID-19 Dashboard*, Bureau of Prisons.

resentencing. In imposing a sentence, that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing, the Court must consider, in relevant part:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for--
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
>>
>>> (i) …
>>>
>>> (ii) …
>
> (5) any pertinent policy statement--
>
>> (A) …; and
>>
>> (B) …
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) [omitted]

18 U.S.C. § 3553(a)

Mr. Cruz argues that he has been rehabilitated while in custody and engaged in available programing, including the Residential Drug Abuse Program ("RDAP").

[Def. Mem. in Supp. at 10]. He remains discipline-free. [Dkt. 67 (Dec. 10, 2019, BOP Summ. Reentry Plan.) at 2]. The BOP has a favorable impression of Defendant's adjustment to the correctional setting: "Inmate Cruz has maintained clear conduct during his incarceration. Inmate Cruz engages in accurate self-appraisal by acknowledging and correcting irrational thinking patterns. He obeys institution rules and regulations and is able to identify and access community resources for basic needs. Furthermore, he acknowledges and appropriately corrects criminal thinking patterns and behaviors." [*Id.*]. He proposes to reside with his wife, where he would work at the family's carwash that his wife now operates. [Dkt. 71 (Def. Suppl. Mem.) at 2]. He intends to continue his substance abuse treatment if released. [*Id.* at 2-3].

In opposition, the Government argues that Mr. Cruz was a substantial drug dealer who was undeterred by prior custodial sentences. [Gov. Mem. in Opp'n at 11-13]. The Government also notes that Mr. Cruz was arrested on unrelated state drug distribution charges after his federal arrest. [*Id.* at 13]. The Government argues that the drug and alcohol rehabilitation treatment that he is receiving in BOP custody would be interrupted if he were released. [*Id.* at 13-14].

The Court considers the hardships Mr. Cruz undoubtedly experienced because of his incarceration during the pandemic, particularly given his diagnosis of COVID-19 and pneumonia. Nevertheless, after considering these circumstances and considering each of the § 3553(a) factors, the Court cannot conclude that the remaining portion of his custodial sentence is futile. Mr. Cruz committed a serious narcotics offense for his financial advantage and endangered the public by engaging police in a pursuit on interstate highways during rush hour traffic. The pursuit

ended because the vehicle Mr. Cruz was operating crashed. Even after his federal arrest, he persisted to engage in drug distribution activities. [Dkt. 57 (Rev. Suppl. to PSR)]. In his subsequent state arrest, police seized 11.5 pounds of marijuana and $6,831. [*Id.*]. While Mr. Cruz made strides to prepare himself to re-enter society, the sentence imposed reflected the seriousness of his offense and the need to instill respect for the law. These remain significant considerations.

His sentence began on February 27, 2019 and thus he has served 27 months of a 63-month sentence. [Dkt. 67 at 1 (Dec. 10, 2019, BOP Summ. Reentry Plan.)]. The BOP is in the best position to reward him for his positive behavior. Indeed, the BOP has awarded him with goodtime credit. [Def. Ex. F at 1 (BOP Sent. Computation)]. He may receive additional time off his sentence upon successful completion of the RDAP program. 18 U.S.C. § 3621(e)(2)(B).

The Court finds that a reduction of the Defendant's sentence given the proportion remaining to serve and the applicability of a mandatory minimum would exacerbate existing sentencing disparities among similarly situated defendants. *Butler*, 2021 WL 1166001, at *2 ("…it is entirely within the district court's discretion to consider how much time an inmate has already served of his overall sentence when the court is weighing whether a release for extraordinary and compelling circumstances is consistent with the Section 3553(a) factors, such as the need for deterrence and the danger posed to the community by the inmate's release.").

Therefore, even if extraordinary and compelling reasons for a sentence modification existed, there is no sentence modification that would comport with the purpose of sentencing as set forth in § 3553(a).

## Conclusion

For the reasons stated above, the Court DENIES Defendant's Motion for a Reduction of Sentence.

                                          IT IS SO ORDERED.

                                          _____/s/_____
                                          Hon. Vanessa L. Bryant
                                          United States District Judge

Dated this day in Hartford, Connecticut: May 6, 2021